404 P.2d 966

Gloria G. FENTON, Plaintiff and Respondent,

v.

**CEDAR LUMBER & HARDWARE COM-
PANY, a corporation, Defendant
and Appellant.**

No. 10238.

Supreme Court of Utah.

Aug. 17, 1965.

Orville Isom, Cedar City, for appellant.

Patrick H. Fenton, Cedar City, for re-
spondent.

CALLISTER, Justice:

An action to quiet title to a parcel of
land situated in Cedar City, Utah. From a
judgment quieting title in plaintiff and
denying defendant's claim, the latter ap-
peals.

The parcel in controversy is the east half
of an area 4 rods wide and 150 feet deep.
This latter area will be referred to here-
after as the "street" or "street area." This

area was originally a part of a 5.9 acre tract owned by one Kate Wallace. It runs north and south and bisects the original Wallace tract.

In 1942 and 1943, Wallace, by warranty deeds, conveyed the easterly portion of her tract to plaintiff's predecessors. The deeds described the property conveyed as commencing at the northeast corner and then running west "to the east line of the public road as platted on Plat A of the plat of said property and adjoining property made by Theron Ashcroft; thence south along the east line of said road; * * *."[1]

Kate Wallace in 1944, by warranty deed, conveyed the west portion of her tract to defendant's predecessor in interest. In this deed, the east boundary was described as the west line of the "street" described in the previous deeds. Thus, Kate Wallace had conveyed her entire tract by metes and bounds, excepting the strip 4 rods wide and 150 feet deep, running north and south through the middle—the so-called "street."

On March 15, 1950, Kate Wallace executed a warranty deed to Cedar City of the property comprising the "street" with the provision that it be "used for a street and no other purpose." The city accepted the deed and duly recorded the same. At this time, a street named Dewey Avenue had been opened to the north of the Wallace tract and it was the intention of the city to extend it to the south. This was never done.

In August of 1951, Kate Wallace delivered to defendant a quitclaim deed to the "street" property which recited: "It is the intention of the grantor to convey all right, title and interest which grantor may own in the above property, heretofore conveyed to Cedar City Corporation for a street, in the event Cedar City Corporation vacates said street." In 1960, Cedar City, by ordinance, vacated and closed said "street."

The problem before this court is enhanced by the fact that the "street" was never opened by the city, never used by the public and never platted as such in the official records.[2] No one objected to the closing and vacating of the "street" and no private or public easement is claimed. Plaintiff asserts title to the east 2 rods of the "street" by virtue of being an abutting owner.[3] Defendant claims title through its quitclaim deed from Kate Wallace.

We affirm the trial court and hold, as it did, that the deeds of Kate Wallace to the predecessors of plaintiff conveyed her fee

---

1. In 1946 and 1950, Kate Wallace executed quitclaim deeds to plaintiff's predecessors in interest for the purpose of correcting the starting point. Both of these "correction deeds" used the east line of the "street" as the west boundary.

2. There is no record of a "Plat A of the plat of said property and adjoining property made by Theron Ashcroft."

3. The west 2 rods are not involved in this lawsuit.

interest to the center line of the "street," subject to an easement for a public road.

■ Section 27-1-7, U.C.A.1953,[4] provided in part: " * * * A transfer of land bounded by a highway passes the title of the person whose estate is transferred to the middle of the highway." In Hummel v. Young,[5] this court pointed out that this statute was declaratory of the common law,[6] and that a private conveyance of land bounded by or abutting on a highway, the fee to which belongs to the abutting owners, is presumed to convey the fee to the highway to the center line thereof. This presumption is rebutted only by clear evidence that the grantor did not intend to convey his interest in the highway.

It is stated in 49 A.L.R.2d p. 1001: "Numerous later cases show that, in absence of an intent to the contrary sufficiently appearing, a deed which refers to or describes the land as bounding on a highway, or describes the same by lot or block according to a map or plat which shows a highway boundary, carries title to the center line of the supposed highway, despite the fact that it has acquired no legal existence as a public way, as in case of absence of effective dedication, or public acceptance or use."

[2] In the instant case, there is no clear evidence that Kate Wallace did not intend to convey her underlying fee interest in the street. The calls in her deeds by which plaintiff's predecessors acquired their title are to the "street line." Whether the "street line" was intended to be the center line or side line of the street we do not know; but under Section 27-1-7, U.C.A.1953, there is a presumption that it is the center line. This is so even though the street was non-existent.[7]

■ Kate Wallace retained an easement over the fee in the street for street purposes, which easement she conveyed to Cedar City. Her use of a warranty deed does not indicate that she claimed the underlying fee in the "street area." When Cedar City enacted the ordinance vacating the street property, Kate Wallace had no reversionary interest; therefore, her quitclaim deed to the defendant was a nullity.

Affirmed. Costs to plaintiff.

HENRIOD, C. J., and McDONOUGH, CROCKETT and WADE, JJ., concur.

4. Repealed by Ch. 39, § 160, Laws of Utah 1963. Was in effect, however, at all times pertinent to this action.
5. 1 Utah 2d 237, 265 P.2d 410 (1953).
6. Citing Brown v. Oregon Short Line R. Co., 36 Utah 257, 102 P. 740, 24 L.R.A.,N.S., 86 (1909).
7. Anderson v. Citizens' Sav. & Trust Co., 185 Cal. 386, 197 P. 113 (1921).