Randall S. WELSCH, Louellen C. Welsch, Dorothy C. Williams, and Ruth L. Williams, Plaintiffs–Appellees,

v.

Dean SMITH, Defendant–Appellant.

No. 04CA0106.

Colorado Court of Appeals, Div. IV.

May 5, 2005.

Gaddis, Kin & Herd, P.C., James W. Kin, Colorado Springs, Colorado, for Plaintiffs–Appellees.

David H. Krall, Colorado Springs, Colorado, for Defendant–Appellant.

GRAHAM, J.

Defendant, Dean Smith, appeals the trial court's judgments awarding plaintiffs Randall S. and Louellen C. Welsch damages for trespass and denying Smith's claims for adverse possession of a portion of the Welsch property and for a prescriptive easement over a road crossing the Welsch property and property owned by co-plaintiffs, Dorothy and Ruth Williams. We affirm the judgment denying Smith's claim for prescriptive easement, vacate the judgment denying Smith's claim for adverse possession, and remand for further findings.

Smith owns property due south of the Welsch property, and southeast of the Williams property in El Paso County. Since purchasing his land in 1978, Smith has used and has maintained a road that traverses west across the southern margins of the Welsch property and the Williams property.

Verne Rottman owned the Welsch property prior to 1999. In 1987, Rottman agreed to allow Smith to store equipment on a small portion of his property. The storage area had a gated access from the road. Smith also agreed to construct a barbed wire fence to prevent others from entering the storage area.

The agreement did not address Smith's use of the road, but Rottman never complained about Smith using it, and Smith testified that he believed his use of the road was not against Rottman's wishes.

Dorothy Williams testified that she spoke with Smith and verbally permitted him to use that portion of the road on the Williams property.

Shortly after purchasing his land, Smith also constructed a wooden fence on the Welsch property, south of the road, to delineate what he believed to be the northern property line of his parcel. Smith used the small strip of land south of the fence to store concrete forms. After Rottman sold the property to Welsch, Smith removed the wooden fence at Welsch's request. Smith later removed trees and survey stakes from this strip of land, and he also re-graded the Welsches' driveway and a shoulder of the road, moving dirt onto the Welsch property.

The Welsches filed a complaint against Smith for trespass and requested an injunction and damages. A neighboring landowner also filed a complaint seeking to quiet title in the road, and both Smith and the Welsches were named defendants.

In answering the complaint to quiet title filed by the neighboring landowner, Smith claimed rights to the road and asserted a counterclaim and cross-claim for adverse possession. After the two cases were consolidated, the trial management order reflected Smith's claims for adverse possession to the strip of land south of the road and prescriptive easement in the road. These claims proceeded to trial along with the Welsches' trespass claim.

The trial court, sitting without a jury, denied Smith's claims, finding that his possession of the Welsch property was neither hostile nor adverse to the record owners. The court also found that Smith's use of the road was permissive. The Welsches were awarded damages for trespass, including a sum relating to Smith's removal of trees from the Welsch property. This appeal followed.

## I.

Smith argues that the trial court erred in concluding that his use of land south of the wooden fence and the road was not hostile or adverse. He further asserts the trial court erred in awarding the Welsches the damages for his removal of trees from the strip of land

south of where the fence had been removed because the trees were on his property, which he had acquired through adverse possession. We remand the adverse possession claim to the trial court for further findings.

## A.

■ To obtain title by adverse possession, a party must establish by a preponderance of the evidence that his possession was actual, adverse, hostile, under a claim of right, exclusive, and uninterrupted for the statutory period. *Smith v. Hayden*, 772 P.2d 47 (Colo.1989). The statutory period in Colorado is eighteen years. Section 38–41–101(1), C.R.S.2004.

■ Whether possession is hostile or adverse is ordinarily a question of fact. *Bd. of County Comm'rs v. Ritchey*, 888 P.2d 298 (Colo.App.1994). The question is resolved "by reasonable deductions from the acts as well as declarations of the parties involved." *Vade v. Sickler*, 118 Colo. 236, 240, 195 P.2d 390, 392 (1948).

An appellate court cannot substitute itself as a finder of fact, and the factual findings of the trial court sitting without a jury are not to be disturbed upon appeal unless clearly erroneous and unsupported by the record. "But such restraint in no way limits the power of [an appellate court] to reject the findings and conclusions of the trial judge where they are not supported by any evidence in the record or where the law has not been applied correctly." *Anderson v. Cold Spring Tungsten, Inc.*, 170 Colo. 7, 12, 458 P.2d 756, 758 (1969).

■ For use to be "hostile," the adverse possessor must demonstrate an intention to claim exclusive ownership of the property occupied. *Anderson, supra.* While the possessor need not form the specific intent to take property from its owner, his occupancy of the property must be adverse to the rights of the record holder. *Palmer Ranch, Ltd. v. Suwansawasdi*, 920 P.2d 870 (Colo.App. 1996).

■ Although the mere existence of a fence does not establish adverse possession, when both property owners believe that a

fence has marked the true boundary of the property for eighteen years, there is a presumption that the holding is adverse. *Ritchey, supra,* 888 P.2d at 304.

According to the trial court, the property claimed by adverse possession lies between Smith's property and the wooden fence he constructed on the Welsch property. The trial court found and concluded that: "[W]hile there is a dispute as to when the first fence was constructed, there is no dispute that when asked, Smith removed that fence. As a result, the Court concludes that even if Smith possessed the property for the requisite time period, his possession was not hostile or adverse to either the Rottmans or the Welsches." We reject this conclusion for the following reasons.

First, the record demonstrates that Smith used the property south of the fence for more than eighteen years without complaint from Rottman. It appears that Rottman acquiesced in the placement of the wooden fence as the true boundary line. In such circumstance, a presumption of adversity would arise in Smith's favor. *See Ritchey, supra.* However, the trial court made no finding of Rottman's acquiescence, and Rottman did not testify.

The facts of *Ritchey, supra,* are similar to those present here. There, a public highway was constructed on the northern section of the defendant's property and had been in existence for more than twenty years. Although the highway crossed the defendant's property, a fence had been constructed south of the highway that was believed to be the northern boundary of the property. The trial court found that the defendant's predecessor had acquiesced in the placement of the fence for more than twenty years and therefore concluded that the construction and use of the highway satisfied the elements for adverse possession. We perceive similar circumstances may have existed here; however, the trial court did not address this element.

 Second, assuming that a presumption of adversity arises, the burden then falls upon the challenging party to overcome the presumption. *Niles v. Churchill,* 29 Colo. App. 283, 482 P.2d 994 (1971). Removal of a fence after the land has been adversely pos-

sessed for more than the statutory period would not necessarily rebut such a presumption. *See, e.g., Cole v. Burleson,* 375 So.2d 1046 (Miss.1979)(if a fence encloses the property for the statutory period, title vests in the adverse possessor even if the fence is subsequently removed).

 Any act, other than abandonment, which is inconsistent with ownership and occurs after title by adverse possession is vested does not defeat that title. *Bd. of County Comm'rs v. White & Welch Co.,* 754 P.2d 770 (Colo.App.1988). Title to real property generally cannot be divested by abandonment, and the record here contains no findings which would support Smith's abandonment of title. *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986). The record reflects that Smith continued adverse use of the property after removing the fence by removing trees from the property he claimed to own; therefore, his removal of the fence would not support a finding of abandonment of his right to title by adverse possession. *See Bd. of County Comm'rs v. White & Welch Co., supra,* 754 P.2d at 772.

 We therefore conclude that the trial court erred in ruling that Smith's removal of the fence defeated his adverse possession claim. We remand, however, to allow the trial court to make findings concerning whether Rottman acquiesced in the placement of the wooden fence. *Compare Ritchey, supra, with Littlefield v. Bamberger,* 32 P.3d 615 (Colo.App.2001) (plaintiffs did not believe a fence marked the boundary of the property); *Schutten v. Beck,* 757 P.2d 1139 (Colo.App.1988)(party claiming right by adverse possession did not demonstrate intention to claim exclusive ownership of the property for statutory period). In the event that the trial court determines that a presumption arose in favor of Smith, it will also be necessary for the trial court to consider whether the evidence submitted by the Welsches was sufficient to overcome the presumption. *See United Blood Servs. v. Quintana,* 827 P.2d 509 (Colo.1992)(the burden is on the challenging party to rebut the presumption by competent evidence).

## B.

Smith argues that because his trespass damages judgment was derivative of the adverse possession claim, to the extent he prevails on the issue of adverse possession, the judgment for trespass damages should be reversed. We agree.

On remand, if the court makes findings which support Smith's adverse use and accord him a presumption of adverse possession, the judgment for trespass damages shall be reversed. In light of our conclusions in Part IV below, should the court make findings which defeat Smith's adverse possession claim, in such event, the judgment for trespass damages shall stand affirmed.

## II.

Smith next contends the trial court erred in concluding that Smith did not acquire a prescriptive easement to the road. We perceive no error.

An easement by prescription is acquired when the use is open or notorious, continuous without effective interruption for an eighteen-year period, and either adverse or pursuant to an attempted but ineffective grant. *Clinger v. Hartshorn,* 89 P.3d 462, 466 (Colo.App.2003). On review, we will not disturb a trial court's determination concerning the existence of a prescriptive easement if the court bases its factual findings on competent evidence in the record. *Weisiger v. Harbour,* 62 P.3d 1069, 1071 (Colo.App. 2002).

The trial court rejected Smith's claim for a prescriptive easement to the road because it found that Smith's use of the road had been permissive. Although the Rottman agreement did not explicitly address Smith's use of the road, Smith testified that he did not believe he was using the road against Rottman's wishes and that Rottman never voiced objection. Dorothy Williams also testified that she verbally permitted Smith to use the road.

The record therefore supports the· trial court's finding that Smith's use of the road was permissive. Accordingly, there was no error in concluding that Smith failed to satisfy the elements necessary for a prescriptive easement. *See Weisiger, supra.*

## III.

Smith argues that the trial court erred in permitting the defense of permissive use because it was not raised prior to trial. In response to Smith's objection to evidence indicating Smith had permission to use the road, the trial court ruled ·that permission was not an affirmative defense, but evidence of permission was admissible to contradict Smith's claim of adversity. We agree with the trial court.

It is axiomatic that the party asserting a cause of action in a civil case carries the burden of establishing a prima facie case. Once a prima facie case is established, the opposing party may present evidence to rebut the case and carries the burden of establishing any affirmative defenses. *Western Distributing Co. v. Diodosio,* 841 P.2d 1053 (Colo.1992). Affirmative defenses must be set forth in the pleadings. C.R.C.P. 8(c).

Smith asserts that the defense of permission is synonymous with the affirmative defense of license and, therefore, must have been pleaded to have been considered by the trial court. A license is a personal privilege to do some act or series of acts upon the land of another not involving possession of an estate or interest therein. *Patzer v. City of Loveland,* 80 P.3d 908 (Colo. App.2003). We are not persuaded by the argument that permission should have been raised as an affirmative defense, because the trial court's conclusion rested on Smith's failure of proof and not on any affirmative defense. The evidence of permission was not adduced as affirmative proof of a license. Instead, it was introduced to deny Smith's adverse use of the road. ·

The trial court concluded that Smith failed to establish a prima facie case for prescriptive easement, because his use of the road was not adverse to the record owners, not because he had been granted a "license" to use the road. Thus, Smith's claim failed irrespective of whether the defense of license or permission was properly raised. Where the case-in-chief fails as a matter of law, the

proponent can hardly complain about the defenses which, even if advanced, were immaterial to the failure of proof.

## IV.

 Because it might arise on remand, we address and reject Smith's contention that the trial court erred in admitting expert testimony concerning damages for trees removed from the Welsch property because the expert was not properly endorsed.

 Trial courts have broad discretion in determining whether to allow late endorsement of witnesses not listed in pretrial orders, and we will not disturb a trial court's ruling absent an abuse of discretion. *C.K.A. v. M.S.*, 695 P.2d 785 (Colo.App.1984). Although the expert witness was listed as a lay witness in the trial management order, the trial court concluded that both parties were aware that the witness was going to testify as to the value of the trees removed. Furthermore, Smith was allowed extensive voir dire and ultimately offered no objection to the expert's qualifications regarding the valuation of the trees. We therefore perceive no error in allowing the expert's testimony.

The judgment denying Smith's claim for prescriptive easement is affirmed, the judgment denying Smith's adverse possession claim is vacated, and the case is remanded for further findings consistent herewith.

Chief Judge DAVIDSON and Judge CRISWELL* concur.